1  Lincoln D. Bandlow, Esq. (CA #170449)
Lincoln@BandlowLaw.com
2  **Law Offices of Lincoln Bandlow, PC**
1801 Century Park East, Suite 2400
3  Los Angeles, CA  90067
Phone: (310) 556-9680
4  Fax: (310) 861-5550

5  Attorney for Plaintiff
Strike 3 Holdings, LLC
6

7              **UNITED STATES DISTRICT COURT**

8            **NORTHERN DISTRICT OF CALIFORNIA**

9                  **SAN JOSE DIVISION**

10

11  STRIKE 3 HOLDINGS, LLC,                    Case Number:

12              Plaintiff,              **COMPLAINT FOR COPYRIGHT
                                        INFRINGEMENT - DEMAND FOR JURY**
13  vs.                                 **TRIAL**

14  JOHN DOE subscriber assigned IP address
98.45.159.1,
15

16              Defendant.

17

18      Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), brings this complaint

19  against Defendant, John Doe subscriber assigned IP address 98.45.159.1 ("Defendant"), and

20  alleges as follows:

21                        **Introduction**

22      1.    This is a case about the ongoing and wholesale copyright infringement of

23  Plaintiff's motion pictures by Defendant, currently known only by an IP address.

24      2.    Plaintiff is the owner of award-winning, critically acclaimed adult motion

25  pictures.

26      3.    Strike 3's motion pictures are distributed through the *Blacked*, *Blacked Raw*,

27  *MILFY*, *Slayed*, *Tushy*, *Tushy Raw*, *Vixen*, and *Wifey* adult websites and DVDs.  With millions

28  of unique visitors to its websites each month, the brands are famous for redefining adult content,

1

creating high-end, artistic, and performer-inspiring motion pictures produced with a Hollywood style budget and quality.

       4.      Defendant is, in a word, stealing these works on a grand scale.  Using the BitTorrent protocol, Defendant is committing rampant and wholesale copyright infringement by downloading Strike 3's motion pictures as well as distributing them to others.  Defendant did not infringe just one or two of Strike 3's motion pictures, but has been recorded infringing 40 movies over an extended period of time.

       5.      Although Defendant attempted to hide this theft by infringing Plaintiff's content anonymously, Defendant's Internet Service Provider ("ISP"), Comcast Cable, can identify Defendant through his or her IP address 98.45.159.1.

       6.      This is a civil action seeking damages under the United States Copyright Act of 1976, *as amended*, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

### Jurisdiction and Venue

       7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (jurisdiction over copyright actions).

       8.      This Court has personal jurisdiction over Defendant because Defendant used an Internet Protocol address ("IP address") traced to a physical address located within this District to commit copyright infringement.  Therefore: (i) Defendant committed the tortious conduct alleged in this Complaint in this State; (ii) Defendant resides in this State and/or; (iii) Defendant has engaged in substantial – and not isolated – business activity in this State.

       9.      Plaintiff used IP address geolocation technology by Maxmind Inc. ("Maxmind"), an industry-leading provider of IP address intelligence and online fraud detection tools, to determine that Defendant's IP address traced to a physical address in this District.  Over 5,000 companies, along with United States federal and state law enforcement, use Maxmind's GeoIP data to locate Internet visitors, perform analytics, enforce digital rights, and efficiently route Internet traffic.

       10.     Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this district because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District;

2

1    and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this

2    State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for

3    copyright cases) because Defendant or Defendant's agent resides or may be found in this

4    District.

5                                                  **Parties**

6           11.     Plaintiff, Strike 3 is a Delaware limited liability company located at 2140 S.

7    Dupont Hwy, Camden, DE.

8           12.     Plaintiff currently can only identify Defendant by his or her IP address.

9    Defendant's IP address is 98.45.159.1.  Defendant's name and address can be provided by

10   Defendant's Internet Service Provider.

11                                      **Factual Background**

12                           *Plaintiff's Award-Winning Copyrights*

13          13.     Strike 3's subscription-based websites proudly boast a paid subscriber base that

14   is one of the highest of any adult-content sites in the world.  Strike 3 also licenses its motion

15   pictures to popular broadcasters and Strike 3's motion pictures are some of the highest selling

16   adult DVDs in the United States.

17          14.     Strike 3's motion pictures and websites have won numerous awards, such as

18   "best cinematography," "best new studio," and "adult site of the year."

19          15.     Strike 3's motion pictures have had positive global impact, leading more adult

20   studios to invest in better content, higher pay for performers, and to treat each performer with

21   respect and like an artist.

22          16.     Unfortunately, Strike 3, like a large number of other makers of motion picture

23   and television works, has a major problem with Internet piracy.   Often appearing among the

24   most infringed popular entertainment content on torrent websites, Strike 3's motion pictures are

25   among the most pirated content in the world.

26                    *Defendant Used the BitTorrent File Distribution Network*

27                           *to Infringe Plaintiff's Copyrights*

28          17.     BitTorrent is a system designed to quickly distribute large files over the Internet.

3

1    Instead of downloading a file, such as a movie, from a single source, BitTorrent users are able

2    to connect to the computers of other BitTorrent users in order to simultaneously download and

3    upload pieces of the file from and to other users.

4        18.     BitTorrent's popularity stems from the ability of users to directly interact with

5    each other to distribute a large file without creating a heavy load on any individual source

6    computer and/or network.  It enables Plaintiff's motion pictures, which are often filmed in state

7    of the art 4kHD, to be transferred quickly and efficiently.

8        19.      To share a movie within the BitTorrent network, a user first uses BitTorrent

9    software to create a .torrent file from the original digital media file.  This process breaks the

10    original digital media file down into numerous pieces.

11        20.     The entire movie file being shared has a hash value (*i.e.*, the "File Hash").  A

12    hash value is an alpha-numeric value of a fixed length that uniquely identifies data.

13        21.     Hash values are not arbitrarily assigned to data merely for identification

14    purposes, but rather are the product of a cryptographic algorithm applied to the data itself.  As

15    such, while two identical sets of data will produce the same cryptographic hash value, any

16    change to the underlying data – no matter how small – will change the cryptographic hash value

17    that correlates to it.

18        22.     To find and re-assemble the pieces of the digital media file, *i.e.*, to download the

19    file using BitTorrent, a user must obtain the .torrent file for the specific file that has been broken

20    down into pieces.

21        23.     Each .torrent file contains important metadata with respect to the pieces of the

22    file. When this data is put into the cryptographic algorithm, it results in a hash value called the

23    "Info Hash."

24        24.     The "Info Hash" is the data that the BitTorrent protocol uses to identify and

25    locate the other pieces of the desired file (in this case, the desired file is the respective file for

26    the infringing motion pictures that are the subject of this action) across the BitTorrent network.

27        25.     Using the Info Hash in the metadata of a .torrent file, a user may collect all the

28    pieces of the digital media file that correlates with the specific .torrent file.

4

---

Complaint – Demand for Jury Trial

26.     Once a user downloads all of the pieces of that digital media file from other BitTorrent users, the digital media file is automatically reassembled into its original form, ready for playing.

27.     Plaintiff has developed, owns, and operates infringement detection systems named "VXN Scan" and the "Cross Reference Tool".  Each infringement detection system identifies infringement in two distinct ways.

28.     The Cross Reference Tool first searched for and obtained .torrent files claiming to be infringing copies of Plaintiff's works, and then VXN Scan downloaded complete copies of the digital media files that correlate to those .torrent files.

29.     Plaintiff then compared the completed digital media files to Plaintiff's copyrighted works to determine whether they are infringing copies of one of Plaintiff's copyrighted works.

30.     The digital media files have been verified to contain a digital copy of a motion picture that is identical (or, alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted Works.

31.     VXN Scan used the "Info Hash" value, contained within the metadata of the .torrent file which correlated with a digital media file that was determined to be identical (or substantially similar) to a copyrighted work, to download a piece (or pieces) of multiple digital media files from Defendant using the BitTorrent network.

32.     VXN Scan only downloads pieces of digital media files from Plaintiff's copyrighted works. At no point did VXN Scan upload content to any BitTorrent user.  Indeed, it is incapable of doing so.

33.     While Defendant was using the BitTorrent file distribution network, VXN Scan established multiple direct TCP/IP connections with Defendant's IP address.

34.     Plaintiff identified these pieces as portions of infringing copies of Strike 3's motion pictures.

35.     VXN Scan detected, captured and documented Defendant transmitting pieces of Plaintiff's copyrighted motion pictures and recorded those transactions in a Packet Capture

5

1     ("PCAP") file.

2        36.     Plaintiff also recorded infringement using its Cross Reference Tool.

3        37.     The Cross Reference Tool is designed on the basis of a distributed hash table

4     ("DHT") and is a class of decentralized distributed systems that provides an identification

5     service similar to a hash table: (key, value) pairs are stored in a DHT, and any participating

6     node can efficiently retrieve the value associated with a given key.

7        38.     BitTorrent clients use a DHT to locate peers who are participating in the

8     distribution of the digital media files related to the Info Hash. Specifically, a BitTorrent client

9     locates and connects to the DHT network. That way it registers its own IP address while

10     requesting IP addresses of other peers, which are distributing the same .torrent file.

11        39.     Using this process BitTorrent users are able to locate and connect to a number of

12     peers within a particular swarm, and download the data related to each .torrent file.

13        40.     A BitTorrent client registers the IP address of the user into the DHT with the

14     purpose of participating in the distribution of constituent pieces of the relevant digital media

15     file.

16        41.     The Cross Reference Tool uses servers that locate .torrent files and their related

17     Info Hashes. The servers subsequently download the torrent information from popular torrent

18     websites.  The Cross Reference Tool is incapable of downloading any digital media file

19     associated with an Info Hash, and it has only the ability to download torrent file metadata.

20        42.     Similar to BitTorrent clients, the Cross Reference Tool uses a DHT to obtain the

21     IP Addresses of peers registered to each .torrent file listed in the DHT.

22        43.     The Cross Reference Tool detected and documented that Defendant used the

23     BitTorrent File Distribution Network with the purpose of distributing digital media files that

24     have been determined to be identical (or substantially similar) to Plaintiff's copyrighted motion

25     pictures. At no point did the Cross Reference Tool upload content to any BitTorrent user.

26     Indeed, it is incapable of doing so.

27        44.     Both VXN Scan and the Cross Reference Tool independently recorded multiple

28     infringements in the manner described above.  Collectively, Plaintiff's proprietary software

6

1  detected 40 number of infringements.

2      45.    Each work infringed by Defendant is listed on Exhibit A and sets forth the

3  Universal Time Coordinated (UTC) time and date of each infringement, along with the Info

4  Hash value obtained from the metadata of the corresponding .torrent file.

5      46.    Exhibit A also sets forth relevant copyright information for each work at issue:

6  the date of publication, the date of registration, and the work's copyright registration number.

7  In a showing of good faith, Plaintiff has intentionally omitted the title of the work from this

8  public filing due to the adult nature of its content, but can provide a version of Exhibit A

9  containing the works' titles to the Court or any party upon request.

10      47.    Thus, Defendant downloaded, copied, and distributed Plaintiff's Works without

11  authorization.

12      48.    Defendant's infringement was continuous and ongoing.

13      49.    Plaintiff owns the copyrights to the Works and the Works have been registered

14  with the United States Copyright Office.

15      50.    Plaintiff seeks statutory damages, attorneys' fees, and costs under 17 U.S.C. §

16  501 of the United States Copyright Act.

17  **COUNT I**

18  **<u>Direct Copyright Infringement</u>**

19      51.    The allegations contained in paragraphs 1-50 are hereby re-alleged as if fully set

20  forth herein.

21      52.    Plaintiff is the owner of the Works, which is an original work of authorship.

22      53.    Defendant copied and distributed the constituent elements of Plaintiff's Works

23  using the BitTorrent protocol.

24      54.    At no point in time did Plaintiff authorize, permit or consent to Defendant's

25  distribution of its Works, expressly or otherwise.

26      55.    As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

27  (A)    Reproduce its Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

28  (B)    Distribute copies of the Works to the public by sale or other transfer of

7

1  ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

2       (C)    Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by

3  showing the Works' images in any sequence and/or by making the sounds accompanying the

4  Works' audible and transmitting said performance of the work, by means of a device or process,

5  to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's

6  definitions of "perform" and "publicly" perform); and

7       (D)    Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by

8  showing individual images of the works non-sequentially and transmitting said display of the

9  works by means of a device or process to members of the public capable of receiving the

10  display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

11       56.    Defendant's infringements were committed "willfully" within the meaning of

12  17 U.S.C. § 504(c)(2).

13       WHEREFORE, Plaintiff respectfully requests that the Court:

14       (A)    Permanently enjoin Defendant from continuing to infringe Plaintiff's

15  copyrighted Works;

16       (B)    Order that Defendant delete and permanently remove the digital media files

17  relating to Plaintiff's Works from each of the computers under Defendant's possession, custody

18  or control;

19       (C)    Order that Defendant delete and permanently remove the infringing copies of the

20  Works Defendant has on computers under Defendant's possession, custody or control;

21       (D)    Award Plaintiff statutory damages per infringed work pursuant to

22  17 U.S.C. § 504(a) and (c);

23       (E)    Award Plaintiff its reasonable attorneys' fees and costs pursuant to

24  17 U.S.C. § 505; and

25       (F)    Grant Plaintiff any other and further relief this Court deems just and proper.

26

27

28

8

Complaint – Demand for Jury Trial

1

2

3     DATED this 5th day of June, 2025.

4                                              **Law Offices of Lincoln Bandlow, PC**

5                                              _s/ Lincoln D. Bandlow_
                                               Lincoln D. Bandlow
6                                              Attorneys for Plaintiff
                                               Strike 3 Holdings, LLC
7

8                          <u>**DEMAND FOR A JURY TRIAL**</u>

9     Plaintiff hereby demands a trial by jury on all issues so triable.

10    DATED this 5th day of June, 2025.

11                                             **Law Offices of Lincoln Bandlow, PC**

12                                             _s/ Lincoln D. Bandlow_
                                               Lincoln D. Bandlow
13                                             Attorneys for Plaintiff
                                               Strike 3 Holdings, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint – Demand for Jury Trial